IRVING TRUST COMPANY AND AUGUSTUS S. PEABODY, TRUSTEES, PLAINTIFFS, v. DANIEL D. CONWAY, DEFENDANT.

Decided July 6, 1933.

For the motion, *Thompson & Hanstein.*

*Contra, Cole & Cole.*

JAYNE, S. C. C.   The plaintiffs became the owners by assignment of a certain bond and mortgage executed and delivered on January 27th, 1926, by one Raymond P. Thompson to The Peerless Plush Manufacturing Company to secure the payment of the sum of $13,500 on January 29th, 1929, with interest.   The plaintiffs, as complainants, prosecuted a suit in the Court of Chancery to foreclose this mortgage, resulting in the entry on August 28th, 1931, of a final decree adjudging the plaintiffs, as complainants in that cause, to be entitled to the sum of $12,809.55 with lawful interest from August 25th, 1931, and costs of suit.   On August 28th, 1931, a writ of *fieri facias* issued out of the Court of Chancery, directed to the sheriff of the county of Atlantic, commanding him to make, by a sale of the mortgaged premises, the sum so due the complainants, who are the plaintiffs in this action. The defendant, Daniel D. Conway, was at that time the sheriff of Atlantic county and the mortgaged premises were duly advertised pursuant to the writ, and after some adjournments, the mortgaged premises were exposed for sale by the sheriff on December 3d, 1931, and at this sale, the sheriff struck off the premises to Raymond P. Thompson, whose bid of $12,000 was

the highest proposal made for the premises at the sale. The premises were sold under the usual conditions of sale which required the purchaser to pay the sheriff ten per centum of the purchase money at the time the property was struck off to the purchaser. The purchaser, Raymond P. Thompson, thereupon delivered to the sheriff his own check, drawn on the First National Bank of Pleasantville, New Jersey, in the amount of the down payment of $1,200. The sheriff accepted this check, reported the sale, and the sale was thereafter, on December 16th, 1931, duly confirmed. The purchaser, upon the confirmation of the sale, refused to attend and receive a deed for the mortgaged premises and pay the purchase price in accordance with the terms of the sale. The sheriff thereafter readvertised the mortgaged premises for sale, and on February 25th, 1932, struck off the premises to the plaintiffs for $100, which was the highest bid then obtainable. This latter sale was duly confirmed. The sheriff has not paid to the plaintiffs as complainants in the foreclosure suit, the sum of $1,200, which was the initial payment required of the purchaser, Raymond P. Thompson, at the first sale.

The plaintiffs filed a petition in their foreclosure suit in the Court of Chancery alleging all of the circumstances here related and praying for an order directing Daniel D. Conway, sheriff of Atlantic county, to pay to them the sum of $1,200 with interest. On August 2d, 1932, an order was made in the foreclosure suit directing Conway as sheriff to show cause why the prayer of the petition should not be granted. An answer to the petition was filed in behalf of Sheriff Conway. This proceeding was heard by the late Vice-Chancellor Ingersoll. The memorandum of his conclusions discloses that the learned vice-chancellor was of the opinion that the petition should be dismissed and an action at law instituted to attain the same object. However, on April 25th, 1933, an order was entered in the foreclosure suit directing that the cause inaugurated by the filing of the petition and the filing of an answer thereto be transferred to the New Jersey Supreme Court under the authority of the act relating to the transfer of causes. *Pamph. L.* 1912, *p.* 417; *Pamph. L.* 1915, *p.* 39.

Recognizing this proceeding as if it had been originally commenced in the Supreme Court, and assuming that the petition and answer, by reason of the transfer of the cause, constitute the pleadings in this court, counsel for the plaintiffs (petitioners) now move to strike out the answer filed in behalf of Sheriff Conway upon the ground that the answer is frivolous. The answer contains four paragraphs. In the first paragraph, all of the averments of the petition are admitted to be true. The second paragraph is but a naked denial of any legal obligation on the part of Sheriff Conway to pay the sum demanded. In the third paragraph, it is asserted that the court (Court of Chancery) is without jurisdiction to grant the relief for which the petitioners pray, and the only averment of fact to be discovered in the answer is in the fourth paragraph in which it is stated that at the time the check of the purchaser, Raymond P. Thompson, was delivered to the under-sheriff, he, Thompson, had sufficient funds in the Pleasantville National Bank, upon which the check was drawn, to pay the same and that he, Thompson, thereafter stopped payment on the check before it was presented for payment.

Assuredly, if Sheriff Conway had actually received the initial payment of $1,200 from the purchaser at the first sale, the plaintiffs could maintain an action of *assumpsit* against the sheriff for money had and received. *Adams* v. *Disston,* 44 *N. J. L.* 662. This motion presents the question whether, having accepted from the purchaser instead of cash a check, the payment of which was thereafter stopped, the sheriff escapes liability to the plaintiffs whose rights were thereby affected. Whether the petition, which is now to be regarded as the complaint, is said to allege a cause of action for money had and received or is in the nature of an amercement or for neglect or default, is obviously a matter of mere form because the facts set forth in the petition are fully and specifically alleged and comprehensively admitted. The petition clearly alleges a cause of action. The non-payment of the check comes to light with the averment of such fact in the answer.

It seems to be the well settled law that in the absence of statutory authority, order of court or consent of the execution

creditor, a sheriff cannot sell on credit, and if he receives anything other than cash in discharge of an execution or in payment for property sold by him, he must respond in cash to the execution creditor. A sheriff who has sold property under an execution cannot successfully resist the right of the plaintiff in execution to receive the proceeds of the sale by alleging as a defense that he, the sheriff, imprudently or indiscreetly extended credit to the purchaser or permitted the purchaser to become possessed of the property without paying the purchase price according to the terms of the sale. *Adams* v. *Disston, supra.* An examination of the earlier cases reveals that a sheriff was liable to an execution plaintiff for the acceptance, without plaintiff's consent, of depreciated currency in satisfaction of the execution. It is, of course, true that the liability of a sheriff as thus expressed has arisen no doubt largely from the fact that the sheriff has by the acceptance of something other than cash or by the extension of credit, satisfied in whole or in part the execution against the judgment debtor. The judgment creditor, having thus lost his right to collect under the execution, is entitled to his remedy against the sheriff. On the other hand, a judgment debtor has an interest in the property sold, and a sheriff cannot in any unauthorized manner deprive him of the benefit of an advantageous sale. It would therefore seem that a sheriff cannot yield any substantial right of either the creditor or the debtor arising out of the execution sale without incurring liability for consequential loss to either the judgment creditor or judgment debtor as the case may be.

Returning to the instant case, when the sheriff struck off the mortgaged premises to Thompson at the purchase price of $12,000 it was then the substantial right of the present plaintiffs to have the sheriff then and there collect from the purchaser ten per centum of the purchase price in accordance with the terms of the sale, and if the purchaser failed to comply, the mortgaged premises could then be resold likewise in accordance with the terms of the sale. The answer states that there were sufficient funds in the bank to the credit of the purchaser with which to pay the check at the time the sheriff accepted it. No doubt this was the reason why the

sheriff assumed the responsibility for accepting the purchaser's check instead of cash for the initial payment on account of the purchase price. The fact that Sheriff Conway assumed that the check was good and would be paid upon presentation is indicative of his good faith in the acceptance of the check, but by its acceptance he was certainly releasing the purchaser from his immediate obligation to comply with the terms of the sale. He accepted a check in lieu of the cash and thereby assumed the risk of the non-payment of the check. The sheriff, of course, must look to the purchaser. *Townshend* v. *Simon,* 38 *N. J. L.* 239.

In *Robertson* v. *Bremer, 90 N. Y.* 208, the court was concerned with circumstances similar to those present in this case. The sheriff had accepted a check from the purchaser at an execution sale which remained unpaid. The property, subject to levy, was thereafter resold at a purchase price much less than that submitted at the first sale. It was claimed that the sheriff could not be held responsible for more than the amount realized at the last sale. The court concluded: "When the sheriff assumed to take Walsh's check and put him in possession of the property and deliver the same to him and close the sale, he made himself responsible for Walsh's bid. A sheriff in such a case must demand money for property sold, and if that is not paid he must then and there avoid the sale and resell the property or postpone the sale giving notice thereof and then make a new sale at a subsequent time. But if he takes anything but money, gives credit to the purchaser, delivers the property to him and closes the sale, then what he takes must be treated as money in his hands to be applied upon the executions."

In its relation to the duty of a sheriff, no significant distinction is discernible between sales of chattels and of real estate. The only difference is that title may be said to pass in chattels by the sale, whereas in the sale of land the deed is necessary to convey the legal title. The rights of the buyer in both instances are certainly fixed when the bid is accepted. When the property, whether real or personal, is struck off and the purchaser subscribes to his bid, each party may compel performance by the other. All that remains necessary to

complete the transaction is merely a compliance with the form of passing title. In the case *sub judice,* the sale was reported and confirmed. If it be true that the purchaser had the money at the time of the sale with which to make the percentage payment, he would doubtlessly have made this payment in cash if so required. Failure to require him to do so in accordance with the terms of the sale has resulted in a loss to the plaintiffs. To merely say in defense that the purchaser stopped payment on the check is not a legally sufficient answer to the alleged cause of action of the plaintiffs. Attention is not invited to any authorities supporting the legal sufficiency of such a defense. The motion to strike out the answer must accordingly be granted.

To hold the selling officer responsible for the proceeds if a check accepted in part of full payment of the purchase price of property sold, may in some circumstances seem to be hard and unjust, but if the law were otherwise, a practice might naturally arise that would materially impair the sincerity of the bids made at such sales, afford opportunities to unscrupulous bidders and render generally such sales uncertain of consummation. The selling official may obtain the consent of the parties in interest to accept deferred payment of the purchase price at such a sale and, in many instances, he may feel warranted in accepting the check of the bidder, but in the latter case, he must assume the chance of incurring liability resulting from the non-payment of the check. A rule will be entered in accordance with this conclusion.